1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11
12

CRYSTAL L. FROST,

                                    Plaintiff,

          v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                                    Defendant.

Case No. 3:11-cv-05753-RJB-KLS

REPORT AND RECOMMENDATION

Noted for August 17, 2012

13
14
15
16
17
18
19
20
21
22
23

Plaintiff has brought this matter for judicial review of defendant's denial of her

application for supplemental security income ("SSI") benefits.  This matter has been referred to

the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR

4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

After reviewing the parties' briefs and the remaining record, the undersigned submits the

following Report and Recommendation for the Court's review, recommending that for the

reasons set forth below, defendant's decision to deny benefits should be reversed and this matter

should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

24
25
26

On April 14, 2009, plaintiff filed an application for SSI benefits, alleging disability as of

August 1, 2004, due to anxiety, obsessive compulsive disorder, a reading comprehension

REPORT AND RECOMMENDATION - 1

disorder, a learning disorder, short-term memory loss, and problems with her bones, back, hips, and nerves. See Administrative Record ("AR") 25, 125, 146.  Her application was denied upon initial administrative review on July 20, 2009, and on reconsideration on October 26, 2009. See AR 25, 79, 86.  A hearing was held before an administrative law judge ("ALJ") on June 9, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 39-76.

On July 7, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 25-34.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 20, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481.  On October 4, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3.  The administrative record was filed with the Court on January 24, 2012. See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding her to be capable of returning to her past relevant work or any other work.  Plaintiff further argues this matter should have been remanded for a new administrative hearing based on additional evidence submitted to the Appeals Council.  For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and thus recommends that defendant's decision should be reversed and that this matter should be remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 2

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this

1   "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

2   stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences

3   "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may

4   draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881

5   F.2d 747, 755, (9th Cir. 1989).

6

7       The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

8   opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir.

9   1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

10   only be rejected for specific and legitimate reasons that are supported by substantial evidence in

11   the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

12   or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

13   (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

14   evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981);

15   Garfield <u>v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

16

17       In general, more weight is given to a treating physician's opinion than to the opinions of

18   those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need

19   not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

20   inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v.</u>

21   <u>Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Thomas v.</u>

22   <u>Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir.

23   2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

24   nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may

25   constitute substantial evidence if "it is consistent with other independent evidence in the record."

26

REPORT AND RECOMMENDATION - 4

1    Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

2          A.    Dr. Sattar

3          Plaintiff challenges the following findings made by the ALJ:

4          . . . Some weight is given to the [December 2009] consultative examination
           report of Dr. [Anjan Sattar[, M.D]. Dr. Sattar has had the opportunity to treat
5          the claimant and therefore can evaluate her condition accurately. The
           undersigned notes that Dr. Sattar does not opine directly on the issue of the
6          claimant's ability to sustain employment, but instead only focuses on her
           symptoms and diagnosis (Ex. 12F). . . .
7

8    AR 32. First, plaintiff takes issue with the ALJ referring to Dr. Sattar as a consultative examiner.

9    It is clear, however, that Dr. Sattar's services were sought for the purpose of evaluating plaintiff.

10   See AR 275 ("Patient is self-referred on suggestion from [the Washington State Department of

11   Social and Health Services ("]DSHS[")]). In addition, the ALJ did appreciate that plaintiff was

12   her treating physician. See AR 32 ("Dr. Sattar has had the opportunity to treat the claimant"; also

13   earlier referring to physician who performed December 2009 consultative examination as being

14   plaintiff's "primary mental health care provider"). Thus, plaintiff has shown no error or mistake

15   on the part of the ALJ here.

16         The undersigned does agree with plaintiff, though, that the ALJ erred in failing to discuss

17   the global assessment of functioning ("GAF") score of 50 Dr. Sattar assessed based in part it

18   appears on his diagnosis of OCD. See AR 277. A GAF score is "a subjective determination

19   based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall

20   level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation

21   omitted). It is "relevant evidence" of the claimant's ability to function mentally. England v.

22   Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). Further, "[a] GAF score of 41-50 indicates

23   '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,'

24   such as an inability to keep a job." Pisciotta, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting

25   
26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); see also England, 490 F.3d at 1023, n.8 (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

The above GAF score, therefore, does indicate Dr. Sattar believed plaintiff had at least some "serious" symptoms or impairment in regard to social, occupational or school functioning, although it is not entirely clear what those specific symptoms or impairment might be.  As such, it was error for the ALJ to not at least consider this GAF score.  Defendant argues that in light of the GAF score's lack of specificity, and the fact that it is not necessarily directly correlated to the criteria the Social Security Administration uses to determine whether an impairment is disabling, that it may only reflect a claimant's subjective symptoms at the time it is assessed and that it can reflect other factors not relevant to the issue of occupational functioning, it does not show the ALJ's decision is inconsistent with Dr. Sattar's evaluation report.  But given that a GAF score may in fact, though not necessarily, bear on plaintiff's ability to work – as defendant's argument implies – it simply cannot be said that that score is *not* occupationally relevant, and thus that the ALJ did not err in failing to discuss or consider it in his decision.

     B.    <u>Dr. Norris</u>

A DSHS psychological/psychiatric evaluation form was completed in early March 2010, by Jack T. Norris, who assessed plaintiff with a number of moderate to marked mental functional limitations.  See AR 332.  Dr. Norris also stated that it was "unclear" if plaintiff would "become employable with treatment" and that "current treatment has not been sufficient for her to return to work," but that "changes in treatment may be sufficient for employability." AR 333.  In regard to the evaluation form Dr. Norris completed, the ALJ stated in relevant part:

> . . . In the absence of long-term treatment records, the claimant relies on singular DSHS mental health evaluations to establish the presence of

REPORT AND RECOMMENDATION - 6

limitations caused by her mental health impairment.  However, it cannot be presumed that the claimant has a long-term disability due to mental impairments based on one-time evaluations and conclusions, such as the classification "chronic mentally ill," which is a term used by DSHS but not by the Social Security Administration [("SSA")] (Ex. 15F, p. 7). . . .

. . .

. . . the opinions of the DSHS examiners regarding the claimant's limitations are given little weight.  Their examinations are subject to different standards than those used by the Social Security Administration, and their conclusions regarding her limitations are not supported by the evidence (Ex. 15F, 4F and 1F). . . .

AR 31-32.  Plaintiff argues, and the undersigned again agrees, that these are not valid reasons for rejecting the findings of Dr. Norris.

First, the fact that an evaluation report is based on a "singular" examination does not by itself constitute a legitimate basis for rejecting it.  Indeed, defendant himself has relied on such one-time evaluations to find claimants not-disabled.  As long as the evaluation report is not "brief, conclusory" or "inadequately supported by clinical findings" – or "by the record as a whole" – and there are no other legitimate reasons for discounting the report, it will be treated as competent medical evidence. Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149.  Second, while it may be that the SSA does not use the term "chronically mentally ill," this does not explain why the specific statements and mental functional limitations in the report themselves (see AR 329, 331-33, 335-37) are incredible.

Third, again although it may be true that DSHS is "subject to different standards" than those the SSA uses, the ALJ fails to point out what exactly those differences are and how they undermine the findings of Dr. Norris.  Thus, this too was not a valid basis for discounting his evaluation report.  Lastly, the ALJ's statement that the evaluation report is "not supported by the evidence" is entirely devoid of "the level of specificity" required to reject medical opinion source

REPORT AND RECOMMENDATION - 7

evidence, and therefore is improper as well. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).[1]

C.   Dr. Krueger

Another DSHS psychological/psychiatric evaluation form was completed in mid-April 2009, by Keith Krueger, Ph.D., who also found plaintiff had a number of moderate to marked mental functional limitations. See AR 243. Dr. Krueger stated as well that plaintiff's symptoms "would interfere w[ith] nearly any job, just as it interfered w[ith] completion of [the] curr[ent] eval[uation]." AR 244 (emphasis in original). The ALJ rejected Dr. Krueger's findings for many of the same reasons the ALJ rejected those of Dr. Norris. See AR 32. As discussed above, those reasons were not proper. The undersigned thus agrees with plaintiff that the ALJ erred here as well.

D.   Other Medical Evidence

A third DSHS psychological/psychiatric evaluation form was completed in late January 2008, by Jeanette Revey, ARNP, in which she found plaintiff to be moderately limited in her ability to exercise judgment, make decisions, control physical or motor movements, and maintain appropriate behavior, and to be markedly limited in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. See AR 219. Once more, the undersigned agrees with plaintiff that the ALJ erred in rejecting these findings, given that the ALJ did so for the same reasons he rejected Dr. Krueger's findings. See AR 32. However, such

---

[1] As the Ninth Circuit explained:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . .

Id. at 421-22 (internal footnote omitted).

REPORT AND RECOMMENDATION - 8

1   error was harmless in this instance, given that Ms. Revey stated plaintiff would be limited to the

2   extent above for at most six months. See AR 220; see also Tackett v. Apfel, 180 F.3d 1094, 1098

3   (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment

4   that can be expected to result in death or that has lasted or can be expected to last for continuous

5   period of not less than twelve months); Stout v. Commissioner, Social Security Admin., 454 F.3d

6   1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to

7   ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding

8   any error on part of ALJ would not have affected "ALJ's ultimate decision.").

9          Plaintiff argues the ALJ also erred in failing to properly address evidence of a hand and

10   other alleged physical impairments from Shirley Deem, M.D., Kathryn Molinar, ARNP, and

11   Nancy Hamlin, ARNP, including a limitation to sedentary work assessed by Ms. Molinar and to

12   essentially light work by Dr. Deem. See AR 233, 237, 269, 321.  Plaintiff argues as well that the

13   ALJ should have further developed the record by obtaining another physical evaluation in light

14   of the evidence from Ms. Molinar and Ms. Hamlin.  The undersigned disagrees.  In her decision,

15   the ALJ found in relevant part as follows:

16
17

18              The record also mentions physical impairments, including carpel tunnel
                syndrome and degenerative joint disease, but at the hearing the claimant did
19              not allege that any physical impairment causes her to be disabled.
                Furthermore, the diagnoses in the record are provisional, at best, and are not
20              supported by the objective evidence.  For example, a . . . DSHS . . . examiner
                diagnosed the claimant with "possible" degenerative joint disease in March
21              2009 (Ex. 2F, p. 3).  However, X-rays taken at that time were normal (Ex. 3F,
                p. 5-6).  The diagnosis of "possible" carpel tunnel syndrome by the DSHS
22              examiner is also unsupported by objective evidence (Ex. 2F, p. 3).  Likewise,
                the conclusion of Shirley Deem, M.D., that the claimant is limited to light
23              work is not supported by the evidence and is inconsistent with her own
                observations, as Dr. Deem did not diagnose the claimant with any physical
24              impairment. . . . The undersigned concurs with the opinion of . . . Robert
                Hoskins, M.D., and finds that these impairments do not affect the claimant's
25

26

REPORT AND RECOMMENDATION - 9

ability to functional and therefore they are not severe.[2]

AR 28.

Plaintiff does not specifically challenge these findings. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).  Nor does the undersigned find the reasons the ALJ gave for finding plaintiff did not have a severe physical impairment to be improper.  Accordingly, no error was committed by the ALJ regarding the evidence of plaintiff's alleged physical impairments.  For the same reasons, the ALJ was not required to further develop the record.[3]

On the other hand, plaintiff points out the record contains a number of GAF scores in the 50 to 54[4] range from her mental health therapists covering the period of late June 2009, through early April 2010. See AR 341-42, 344, 363.  Also as pointed out by plaintiff, the ALJ failed to

---

[2] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.

[3] An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan, 242 F.3d at 1150 (9th Cir. 2001) (citations omitted).  However, it is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record triggered only when there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence).  As indicated by the ALJ's above findings, the evidence in the record is neither ambiguous nor inadequate to allow for a proper evaluation thereof, but rather clearly shows plaintiff's alleged physical impairments to be non-severe.

[4] "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting DSM-IV-TR at 34).

REPORT AND RECOMMENDATION - 10

1   address these scores, and the implications for plaintiff's occupational functioning represented

2   thereby, in her decision.  As discussed above, furthermore, given that such GAF scores may in

3   fact – though again not necessarily – bear on plaintiff's ability to work, it simply cannot be said

4   that those scores are occupationally irrelevant.  Accordingly, nor could it be said that the ALJ did

5   not err in failing to discuss or consider those scores in her decision, particularly as they were

6   provided over the course of nearly year, and thus constitute at least some evidence of plaintiff's

7   overall ability to function during that period.

8

9   II.      The ALJ's Assessment of Plaintiff's Credibility

10          Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

11   642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

12   In addition, the Court may not reverse a credibility determination where that determination is

13   based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

14   discrediting a claimant's testimony should properly be discounted does not render the ALJ's

15   determination invalid, as long as that determination is supported by substantial evidence.

16   Tonapetyan , 242 F.3d at 1148.

17

18          To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

19   reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

20   testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

21   Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

22   claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

23   and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

24   malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

25

26          In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

REPORT AND RECOMMENDATION - 11

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part for the following reason:

> . . . Overall, the claimant's mental health impairments show a pattern of
> moderate symptoms with occasional temporary declines due to outside
> stressors, such as her housing situation or family problems.  The medical
> records do not indicate that her conditions prevent her from functioning in the
> workplace, with the [functional] limitations enumerated [by the ALJ in her
> decision].

AR 31.  A determination that a claimant's subjective complaints are "inconsistent with clinical

observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of

SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  But as discussed above, the ALJ erred in evaluating

much of the medical evidence in the record concerning plaintiff's mental impairments, which, as

discussed greater detail below, is not fully consistent with the functional limitations assessed by

the ALJ.  Thus, this stated reason for discounting her credibility lacks validity.

The ALJ next discounted plaintiff's credibility in part because:

> The lack of a long-term record of treatment indicates that the claimant does
> not have a mental health disability.  Despite claiming that her mental health
> condition first began in 1974, the claimant only sought treatment starting in
> June 2009 (Ex. 2E, p. 2 and Ex. 16F, p. 16). . . . In June 2009, just before the
> claimant started at Cascade Mental Health, [non-examining, consultative
> psychologist, Matthew] Comrie[, Psy.D.,] noted that the claimant had not tried
> mental health services even when her son had died (Ex. 5F, p. 3).  The
> claimant has stated that she only sought health care treatment after DSHS
> suggested she do so (Ex. 12F, p. 1).  When the claimant did seek treatment, it
> lasted less than nine months before she was discharged for failure to return,
> after multiple attempts to contact her went unanswered (Ex. 16F, p. 2).  The
> claimant was encouraged to attend group meetings, but there is nothing in the
> record to suggest that she ever did (Ex. 16F, p. 3).  Her progress notes focus

1
2
3
4
5

> on solving her housing problems, and after she received assistance in finding subsidized housing and underwent the consultative exam for Social Security benefits, she stopped attending counseling and did not respond to correspondence (Ex. 16F, p. 2, 3, 5, 6, 11).  There is no evidence in the record showing that she has re-engaged with treatment since March 2010.  The claimant's apparent disinterest in seeking treatment for her mental health conditions suggests that they do not limit her ability to function as much as she alleges, and are not disabling.

6

7 AR 31-32.  Failure to assert a good reason for not seeking, or following a prescribed course of,

8 treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity

9 of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Thus, a

10 claimant's statements "may be less credible if the level or frequency of treatment is inconsistent

11 with the level of complaints, or the medical reports or records show that the individual is not

12 following the treatment as prescribed or there are no good reasons for this failure." SSR 96-7p,

13 1996 WL 374186 *7.  On the other hand, the ALJ "must not draw any inferences" about a

14 claimant's symptoms and their functional effects from such a failure, "without first considering

15 any explanations" that the claimant "may provide, or other information in the case record, that

16 may explain" that failure. Id.

17        It is true the Ninth Circuit has stated the fact that a claimant does "not seek treatment for

18 a mental disorder until late in the day" is not a proper basis upon which to discount the accuracy

19 of a medical source's assessment thereof. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)

20 (noting those with depression often do not recognize their condition reflects potentially serious

21 mental illness) (citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (holding

22 invalid ALJ's rejection of claimant's assertions concerning depression due to failure to seek

23 psychiatric treatment, finding questionable practice of chastising one with mental impairment for

24 exercise of poor judgment in seeking rehabilitation)).  But while plaintiff argues her lack of

25 insight into her mental illness is not a convincing reason to discount her credibility, she points to

26

REPORT AND RECOMMENDATION - 13

nothing in the record – nor does the undersigned find any evidence contained therein – that her

failure to follow through with treatment was due to a lack of insight.  Accordingly, the ALJ did

not err in finding she lacked credibility for this reason.

The ALJ further discounted plaintiff's credibility in part because:

> The claimant shows little motivation to work, and her statements indicate that
> her application for disability may be motivated by secondary gain rather than
> the presence of a disabling condition.  During a consultative examination in
> December 2009, the claimant informed the examining physician (who is also
> her primary mental health care provider) that she was getting older and
> wanted to change her homelessness situation and therefore went to DSHS for
> assistance.  She obtained benefits from that agency for some time before they
> suggested she seek mental health treatment (Ex. 12F, p. 1).  The claimant's
> statements establish that her economic problems, and not her impairments,
> were the primary motivation behind seeking benefits.  This is consistent with
> her work history, which shows that she has worked very little in the past, and
> her statements which have also shown that she has little work motivation (Ex.
> 5D).  During an evaluation for DSHS benefits in January 2008 the claimant
> noted that she was actually able to work at that time but did not have the
> transportation necessary to get a job (Ex. 1F, p. 4).  She testified at the hearing
> that she quit her job at Wal-Mart because her manager was mean to her and
> quit her most recent job due to a break-up with her significant other.  There is
> no evidence to indicate that her motivation to work will return now that her
> living arrangements are more comfortable due to funding from DSHS.  In
> sum, the evidence suggests that the claimant's reasons for not working are not
> related to her disability and she may be seeking benefits out of economic
> motivation.

AR 32.  The ALJ may consider motivation and the issue of secondary gain in rejecting symptom

testimony, as well as a claimant's poor work history.  See Tidwell v. Apfel, 161 F.3d 599, 602

(9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992);

see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found claimant's

extremely poor work history and lack of propensity to work in her lifetime negatively affected

her credibility regarding her inability to work); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir.

2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for

reasons other than his alleged impairment).

REPORT AND RECOMMENDATION - 14

1    Plaintiff argues the fact that her economic problems motivated her to seek benefits is not

2   a valid reason for discounting her credibility, because "[m]ost if not all disability claimants apply

3   for benefits due to financial need." ECF #14, p. 15.  But what the ALJ found was that plaintiff's

4   statements showed she applied for disability benefits not because she was both disabled *and* had

5   economic hardship – which such benefits are designed to address – but that she applied for them

6   merely because of the latter issue.  This was proper.  Further, while plaintiff argues the ALJ's

7   statements above indicate a lack of appreciation for the difficulties she has endured as a result of

8   being homeless for several years, again the undersigned notes the ALJ merely was pointing out –

9   correctly – her motivation for seeking disability benefits appears to have been solely economic

10   hardship, and not economic hardship based on disability.

11    Plaintiff also contests the ALJ's determination to discount her credibility on the basis that

12   she had reported in January 2008 that "she was actually able to work at that time but did not have

13   the transportation necessary to get a job" (see AR 32), arguing this occurred prior to her alleged

14   onset date of disability of April 14, 2009.  As noted by defendant, however, this is the *amended*

15   alleged onset date of disability (see AR 46), whereas at the time plaintiff made the above report,

16   she was alleging an onset date of disability of August 1, 2004 (see AR 146).  Accordingly, *at the*

17   *time* plaintiff made that report, she considered herself to be capable of working while claiming to

18   be disabled, with the only obstacle to working being a lack of transportation.

19    For the same reason, the undersigned rejects plaintiff's challenge to the ALJ's statement

20   regarding being fired from her Wal-Mart job for reasons other than her impairments, on the basis

21   that it occurred three years prior to her amended alleged onset date of disability.  In addition, no

22   evidence has been pointed to by plaintiff that her quitting this job because her manager made her

23   cry was necessarily related to her alleged mental impairments, as opposed to the fact that, as she

REPORT AND RECOMMENDATION - 15

herself testified, he "was mean to her." AR 32; see also AR 48. The ALJ, therefore, did not err

in discounting plaintiff's credibility based on lack of motivation/secondary gain issues and poor

work history.

> Lastly, the ALJ discounted plaintiff's credibility on the following basis:

> The claimant's level of activity shows that her impairments do not limit her to
> the extent she alleges. She testified at the hearing that she cannot work
> because she does not like to be around people. However, she also stated that
> she did not have problems with co-workers at her job at Legal Aid, and quit
> her last job due to problems not related to her health or her work. She also
> testified that she gets along well with her roommates, and that they often eat
> meals together. This shows that the claimant is capable of functioning within
> groups she is familiar with, and could perform work that does not involve
> frequent interaction with the general public. She also testified that she enjoys
> reading books and watching movies, which indicates that she is capable of
> concentrating for extended periods of time. The claimant has received
> vocational training from Labor Ready, has a certificate in computer
> interfacing, and received computer training from DSHS (Ex. 2E, p. 3 and Ex.
> 16F, p. 22). Her ability to complete these programs and the skills they
> provide suggest that she is capable of performing work functions.

AR 32. The Ninth Circuit has recognized "two grounds for using daily activities to form the

basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

First, such activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's

credibility may be discounted if he or she "is able to spend a substantial part of his or her day

performing household chores or other activities that are transferable to a work setting." Smolen,

80 F.3d at 1284 n.7.

> The claimant, however, need not be "utterly incapacitated" to be eligible for disability

benefits, and "many home activities may not be easily transferable to a work environment." Id.

In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized

for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.

Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or

REPORT AND RECOMMENDATION - 16

her] other testimony." 495 F.3d at 639.

Plaintiff argues that contrary to the ALJ's above findings, she "lives a very sheltered life, and none of her activities are inconsistent with her testimony or show that she would be able to perform any type of competitive work activity on a sustained basis." ECF #14, p. 16.  This argument is devoid of any real specificity or reference to evidence in the record in support thereof, and therefore does not merit further consideration. See Carmickle, 533 F.3d at 1161 n.2; Paladin Associates., Inc., 328 F.3d at 1164; Kim, 154 F.3d at 1000.  As plaintiff's own testimony establishes, furthermore, her acknowledged lack of problems with co-workers and housemates belies her alleged inability to be around others and thus her alleged inability to perform any work on that basis. See Orn, 495 F.3d at 639 (activities of daily living can contradict claimant's "other testimony").

The undersigned also finds without merit plaintiff's assertion that the fact that she has received vocational and computer training, and that she has a certificate in computer interfacing, is not a convincing reason to reject her testimony regarding her current symptoms and limitations.  Plaintiff reported receiving at least some of that training during 2006 – at a time when she still was alleging an onset date of disability of August 1, 2004 – the completion of which, as noted by the ALJ, suggests she was "capable of performing work functions" during that period. AR 32; see also AR 147.

The undersigned does agree with plaintiff that the ALJ erred in relying on the fact that she enjoyed reading books to discount her credibility, given that plaintiff testified that she had to re-read "over and over a certain phrase or a sentence sometimes -- a lot." AR 64.  On the other hand, plaintiff did testify that she was able to watch movies "[m]ost of the time" without having to rewind or go back over them. Id.  The undersigned, therefore, finds the ALJ overall did not err

REPORT AND RECOMMENDATION - 17

in discounting plaintiff's credibility, given that the fact that some of the reasons for discounting

plaintiff's credibility were improper, does not render an ALJ's credibility determination invalid,

as long as that determination is supported by substantial evidence in the record, as it is in this

case. See Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin.,

554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting

claimant's credibility, he presented other valid, independent bases for doing so, each with "ample

support in the record").

III.      The ALJ's Evaluation of the Lay Witness Evidence in the Record

        Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision.

Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

694 F.2d at 642.

        The record contains lay witness statements from several of plaintiff's friends concerning

their observations of her symptoms and limitations. See AR 200-214.  With respect to those lay

witness statements, the ALJ found as follows:

        The undersigned has also considered lay witness statements submitted after
        the hearing by friends of the claimant (Ex. 11E, 12E, and 13E).  The
        questionnaires are suggestive, include leading questions, and assume facts not
        in evidence and facts not found credible by the undersigned.  Of some value is
        this statement regarding the claimant: "Crystal has a must be neat, must be
        clean type of obcessiveness (sic) where as she organizes and cleans stuff
        compulsively at times."  This is a useful quality in a good employee,
        especially a night stocker at Wal-Mart (Ex. 12E, p. 1).  This evidence format

REPORT AND RECOMMENDATION - 18

is the lowest in value when considered against all the other evidence of record, including the sworn testimony before the undersigned.  These statements are given very little weight, but each has been considered in making this decision.

AR 33.  The undersigned agrees with plaintiff that the ALJ's stated reasons are not germane to the particular lay witnesses, but rather are merely conclusory in terms of the credibility of those witnesses or lack thereof.  For example, the ALJ fails to explain what questions are suggestive or leading or how such suggestiveness or the leading nature thereof calls into question the credibility of the actual answers provided.  Nor does the ALJ point to the facts she states are not in evidence or found to be not credible.  The undersigned further agrees with plaintiff that her need to obsessively organize and clean is not necessarily a "useful quality in a good employee," at least to the extent it causes the employee to slow his or her pace of work in a manner deemed to be unacceptable to an employer – such as where the particular task is repeatedly performed to a degree not needed in order to complete it or in way that causes unnecessary slowness – and there is some evidence in the record that plaintiff's need to organize and clean may fall into this category.  See AR 60-61.

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.  See 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends.  See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities."  SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past

REPORT AND RECOMMENDATION - 19

relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff the following residual functional capacity:

> **. . . to perform a full range of work at all exertional levels but with some nonexertional limitations. The claimant can adequately perform the mental activities generally required by competitive, remunerative work. She can understand, remember and carry out simple two to three step detailed or complex instructions as required by both unskilled and semi-skilled work. She has the average ability to perform sustained work activities (i.e., can maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., eight hours per day for five days per week, or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence. She can make judgments on simple and detailed or complex work-related decisions and respond appropriately to supervision, co-workers and deal with changes, all within a stable work environment. The claimant cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact with the general public is not precluded.**

AR 30 (emphasis in original). The undersigned agrees with plaintiff that in light of the errors in evaluating the medical and lay witness evidence the ALJ committed discussed above, it cannot be said that this RFC assessment is completely accurate. Plaintiff further argues the ALJ erred here by failing to include in that assessment the specific moderate to marked mental functional

REPORT AND RECOMMENDATION - 20

limitations noted by Dr. Comrie in late June 2009, which are set forth in Section I ("SUMMARY CONCLUSIONS") of the mental residual functional capacity assessment ("MRFCA") form he completed. See AR 249-50.

Pursuant to the directive contained in defendant's Program Operations Manual System ("POMS"), **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III [the FUNCTIONAL CAPACITY ASSESSMENT section] . . . that adjudicators are to use as the assessment of [the claimant's residual functional capacity ('RFC[']'**." POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original). While it is true that the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Nor does the undersigned find or plaintiff point out any valid reasons for not following that directive in this case or for not finding the narrative written in Section III of the MFRCA by Dr. Comrie is consistent with the ALJ's RFC assessment. See AR 251. As such, the ALJ was not required to consider, let alone adopt, the mental functional limitations checked in Section I of the MRFCA form.

V.      The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff was capable of performing her past work as a night stocker and receiver. See AR 33. The claimant has the burden at step four of the disability evaluation process to show that he or she is unable to return to his or her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Here, the undersigned finds plaintiff has met her burden. Given the ALJ's errors in evaluating the medical evidence in the record – and consequent failure to properly assess plaintiff's residual functional capacity – it is far from clear that plaintiff would be able to return to her past relevant

1    work.  On the other hand, the undersigned finds the record fails to establish at this point that she

2    is incapable of performing any work based on the additional questioning posed to the vocational

3    expert at the hearing.  See AR 72-74.

4    VII.    Additional Evidence Submitted to the Appeals Council

5            The record contains a DSHS psychological/psychiatric evaluation form completed in

6    early March 2011, by Terilee Wingate, Ph.D., in which plaintiff was assessed with a number of

7    moderate to marked mental functional limitations and a current GAF score of 45 (with a GAF

8    score of 50 being the highest in the past year), and which was submitted to the Appeals Council

9    after the ALJ already had issued her decision.  See AR 2, 5, 367-73.  While the parties disagree

10   on whether this additional evidence provides a basis for remanding this matter, the undersigned

11   finds resolution of that issue is not necessary here given that, as discussed herein, remand is

12   appropriate in light of the ALJ's errors discussed above.

13   VII.    This Matter Should Be Remanded for Further Administrative Proceedings

14           The Court may remand this case "either for additional evidence and findings or to award

15   benefits."  Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

16   proper course, except in rare circumstances, is to remand to the agency for additional

17   investigation or explanation."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

18   omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

19   unable to perform gainful employment in the national economy," that "remand for an immediate

20   award of benefits is appropriate."  Id.

21           Benefits may be awarded where "the record has been fully developed" and "further

22   administrative proceedings would serve no useful purpose."  Smolen, 80 F.3d at 1292; Holohan

23   v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

REPORT AND RECOMMENDATION - 22

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical and lay witness evidence in the record, and thus with respect to plaintiff's residual functional capacity and her ability to perform her past relevant work, remand for further administrative proceedings is appropriate in this case.  If, on remand, it is determined that plaintiff cannot perform her past relevant work, then defendant shall proceed to step five of the disability evaluation process to determine whether she is capable of performing other jobs existing in significant numbers in the national economy.

Plaintiff argues the findings of Dr. Norris and Dr. Krueger should be credited as true.  It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted).  However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003).  Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116.  In this case, the improperly rejected medical evidence from Drs. Norris and Krueger in light of the other evidence in the record – including plaintiff's properly discounted credibility – does not result in a requirement that the ALJ find plaintiff disabled.  Accordingly,

REPORT AND RECOMMENDATION - 23

the undersigned declines to apply the credit as true rule here.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 17, 2012**, as noted in the caption.

DATED this 1st day of August, 2012.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 24